**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| **CITY OF MEMPHIS, TENNESSEE,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 2:09-cv-2205-SHM-egb** |
| ) | |
| **ZAYO BANDWIDTH TENNESSEE,** ) | |
| **LLC f/k/a MEMPHIS NETWORX,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |

---

### ANSWER TO COMPLAINT AND COUNTERCLAIMS

---

Comes now Defendant Zayo Bandwidth Tennessee, LLC f/k/a Memphis Networx, LLC ("Zayo Bandwidth") and submits this Answer to the City of Memphis's Complaint, along with its Counterclaims against the City of Memphis.

## I.     ANSWER

Zayo Bandwidth repeats the headings of the City's claims for the sake of convenience only, and expressly denies any allegations or assertion in those headings. Repeating the City's numbered paragraphs, Zayo responds as follows:

1.     Zayo Bandwidth admits only that the City is a political subdivision of the State of Tennessee and denies the remainder of paragraph 1.

2.     Zayo Bandwidth admits that Memphis Networx's principal place of business was once 7620 Appling Center Drive but denies that its current principal place of business is 7620 Appling Center Drive, and otherwise admits the allegations of paragraph 2.

3.     Because this matter has been removed to federal court, the City's jurisdictional and venue

allegations are irrelevant.

4.      Admitted.

5.      Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 5.

6.      Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 6.

7.      Zayo Bandwidth admits only to the language of the statutes insofar as they speak for themselves, and denies the remainder of paragraph 7.

8.      Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 8.

9.      Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 9.

10.     Zayo Bandwidth admits only that where control of the streets and public rights of way is properly delegated and vested in the City by the General Assembly, the City holds its streets in a governmental and not in a proprietary capacity, and denies the remainder of paragraph 10.

11.     Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 11.

12.     Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 12

13.     Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 13.

14.     Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 14.

15.    Zayo Bandwidth admits only to the language of the statute insofar as it speaks for itself, and denies the remainder of paragraph 15.

16.    Zayo Bandwidth denies each and every assertion set forth in paragraph 16.

17.    Zayo Bandwidth denies each and every assertion set forth in paragraph 17.

18.    Zayo Bandwidth admits only that it was coerced into executing a Telecommunications Franchise Contract Agreement (the "Franchise") on December 5, 2000, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth.  Zayo Bandwidth denies the remainder of paragraph 18.

19.    Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth also admits the language of the Franchise only insofar as that document speaks for itself, and denies the remainder of paragraph 19.

20.    Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth also admits the language of the Franchise only insofar as that document speaks for itself, and denies the remainder of paragraph 20.

21.     Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth also admits the language of the Franchise only insofar as that document speaks for itself, and denies the remainder of paragraph 21.

22.    Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth also admits the language of the Franchise only insofar as that document speaks

for itself, and denies the remainder of paragraph 22.

23.     Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth also admits the language of the Franchise only insofar as that document speaks for itself, and denies the remainder of paragraph 23.

24.     Zayo Bandwidth denies each and every assertion in paragraph 24.

## COUNT I
## DECLARATORY JUDGMENT

25.     Zayo Bandwidth's responses to paragraphs 1 through 24 are incorporated by reference as if set forth fully herein.

26.     Zayo Bandwidth denies each and every assertion set forth in paragraph 26.

27.     Zayo Bandwidth denies each and every assertion set forth in paragraph 27.

28.     Zayo Bandwidth denies each and every assertion set forth in paragraph 28.

29.     Zayo Bandwidth denies each and every assertion set forth in paragraph 29.

30.     Zayo Bandwidth denies each and every assertion set forth in paragraph 30.

31.     Zayo Bandwidth denies each and every assertion set forth in paragraph 31.

32.     Zayo Bandwidth denies each and every assertion set forth in paragraph 32.

33.     Zayo Bandwidth denies each and every assertion set forth in paragraph 33.

34.     Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

## COUNT 2
## BREACH OF CONTRACT

35.     Zayo Bandwidth's responses to paragraphs 1 through 34 are incorporated by reference as if set forth fully herein.

36.     Zayo Bandwidth denies each and every assertion set forth in paragraph 36.

37.    Zayo Bandwidth admits only that it was coerced into executing the Franchise on January 3, 2001, and denies that the Franchise was a valid, legal contract binding on Zayo Bandwidth. Zayo Bandwidth denies the remainder of paragraph 37.

38.    Zayo Bandwidth denies each and every assertion set forth in paragraph 38.

39.    Zayo Bandwidth denies each and every assertion set forth in paragraph 39.

40.    Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

41.    Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

**COUNT 3**
**STATUTORY RIGHT TO REASONABLE RENTALS AND JUST DAMAGES**

42.    Zayo Bandwidth's responses to paragraphs 1 through 41 are incorporated by reference as if set forth fully herein.

43.    Zayo Bandwidth denies each and every assertion set forth in paragraph 43.  Zayo Bandwidth further denies that the City is entitled to any relief whatsoever.

**COUNT 4**
***QUANTUM MERUIT* AND UNJUST ENRICHMENT**

44.    Zayo Bandwidth's responses to paragraphs 1 through 43 are incorporated by reference as if set forth fully herein.

45.    Zayo Bandwidth admits only that, since 2001, the City has occasionally granted Zayo Bandwidth certain permits that regulated the time, place and manner by which Zayo Bandwidth could access its telecommunications facilities that are rightfully situated within the public rights-of-way.  Zayo Bandwidth denies the remainder of paragraph 45.

46.    Zayo Bandwidth admits only that, since 2001, the City has occasionally granted Zayo Bandwidth certain permits that regulated the time, place and manner by which Zayo Bandwidth could access its telecommunications facilities that are rightfully situated within the public rights-

of-way.  Zayo Bandwidth denies the remainder of paragraph 46.

47.     Zayo Bandwidth denies each and every assertion set forth in paragraph 47.

48.     Zayo Bandwidth denies each and every assertion set forth in paragraph 48.

49.     Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

**COUNT 5**
**SPECIFIC PERFORMANCE**

50.     Zayo Bandwidth's responses to paragraphs 1 through 49 are incorporated by reference as if set forth fully herein.

51.     Zayo Bandwidth admits only that it has installed certain portions of its fiber optic network and attendant facilities in the public rights-of-way, and denies the remainder of paragraph 51.

52.     Zayo Bandwidth admits only that the City has adopted one or more Telecommunications Franchise Ordinances, including Ordinance No. 4404, which was deemed to be invalid and unenforceable by the Court of Appeals of Tennessee, and that the City has sought, under color of law, including its Telecommunications Franchise Ordinances, to deprive Zayo Bandwidth of rights secured to Zayo Bandwidth by the Constitution and laws of the United States and of Tennessee.  Zayo Bandwidth further admits to the language of the ordinance insofar as it speaks for itself, and denies the remainder of paragraph 52.

53.      Zayo Bandwidth admits only that the City has adopted one or more Telecommunications Franchise Ordinances, including Ordinance No. 4404, which was deemed to be invalid and unenforceable by the Court of Appeals of Tennessee, and that the City has sought, under color of law, including its Telecommunications Franchise Ordinances, to deprive Zayo Bandwidth of rights secured to Zayo Bandwidth by the Constitution and laws of the United States and of Tennessee.  Zayo Bandwidth further admits to the language of the ordinance insofar as it speaks

for itself, and denies the remainder of paragraph 53.

54.    Zayo Bandwidth denies each and every assertion set forth in paragraph 54.

55.    Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

## COUNT 6
## CONVERSION

56.    Zayo Bandwidth's responses to paragraphs 1 through 49 are incorporated by reference as if set forth fully herein.

57.    Zayo Bandwidth admits that the City has constructed some telecommunications conduits and denies the remainder of paragraph 57.

58.    Zayo Bandwidth admits that the City has constructed some telecommunications conduits and denies the remainder of paragraph 57.

59.    Zayo Bandwidth denies each and every assertion set forth in paragraph 59.

60.    Zayo Bandwidth denies that the City is entitled to any relief whatsoever.

## PRAYER FOR RELIEF

Zayo Bandwidth denies that the City is entitled to any relief whatsoever, and prays that the City's claims be denied.

## AFFIRMATIVE DEFENSES TO THE CITY'S CLAIMS

### First Defense: Preemption

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of preemption.

### Second Defense: Duress

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of duress.

### Third Defense: Equitable Estoppel

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of equitable estoppel.

### Fourth Defense: Unconscionability

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of unconscionability.

### Fifth Defense: Unclean Hands

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of unclean hands.

### Sixth Defense: Laches

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of laches.

### Seventh Defense: Failure of Consideration

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part due to the lack, inadequacy or failure of consideration that defeats the effectiveness of the contract between the parties, if any there be.

### Eighth Defense: Res Judicata/Collateral Estoppel

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrines of res judicata and collateral estoppel.

### Ninth Defense: Failure to State a Claim

Each and every claim asserted by the City, including each purported cause of action contained therein, fails to state a claim upon which relief can be granted.

### Tenth Defense: Fraud

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred to the extent that it is based on an agreement or agreements that were obtained through fraud because, *inter alia*, the City falsely represented its authority to charge fees for the use of the public rights-of-way, and thereby induced Zayo Bandwidth to enter into an agreement with the City.

### Eleventh Defense: Offset

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred to the extent that the City's claims are subject to an offset.

### Twelfth Defense: Unjust Enrichment

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the doctrine of unjust enrichment.

### Thirteenth Defense: Due Process and Equal Protection

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part because the City has violated, and continues to violate, Zayo Bandwidth's due process and equal protection rights.

### Fourteenth Defense: Violation of 42 U.S.C. § 1983

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part because the City has deprived, and continues to deprive, Zayo Bandwidth of the "rights, privileges or immunities secured by the Constitution and laws" of the United States.

### Fifteenth Defense: Commerce Clause

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part because the City has violated, and continues to

violate, Article I, § 8, cl. 3, of the United States Constitution.

### Sixteenth Defense: Statute of Limitations

Each and every claim asserted by the City, including each purported cause of action contained therein, is barred in whole or in part by the statute of limitations.

### RESERVATION OF RIGHTS

Zayo Bandwidth reserves the right to amend its answer to assert any additional defense or affirmative defense as may later become available or apparent.  Further, Zayo Bandwidth reserves the right to delete any defenses or affirmative defenses that it determines are inapplicable during the course of subsequent discovery.

### II. COUNTERCLAIMS

Counter-Plaintiff Zayo Bandwidth Tennessee, LLC f/k/a Memphis Networx, LLC ("Zayo Bandwidth"), a limited liability company, by and through its undersigned attorneys, and states the following Counterclaims for damages, injunctive and declaratory relief against Counter-Defendant City of Memphis ("the City"), a political subdivision of the State of Tennessee ("the State"):

### NATURE OF THE ACTION

1.     Zayo Bandwidth is a provider of telecommunications services.  It was required to enter into a Telecommunications Franchise Contract (the "Franchise") with the City to gain access to and use of the public rights-of-way within the City's control.  The Franchise imposes burdensome fees and other requirements on Zayo Bandwidth that violate state and federal law. Zayo Bandwidth was forced to enter the Franchise before it could commence construction of its facilities within the City.  The facilities in Memphis are a vital part of Zayo Bandwidth's network.  The terms and conditions imposed by the Franchise are contrary to state and federal law.

2.      Zayo Bandwidth has declined to pay the illegal General Compensation demanded by the City.  However, Zayo Bandwidth, in response to the City's demand, did furnish the City with the Initial Compensation in the form of multiple optical fibers throughout a substantial portion of the Zayo Bandwidth network within the City.   The City has demanded compliance with the illegal General Compensation provisions as a condition of Zayo Bandwidth's continued operation of its network, and has threatened to evict Zayo Bandwidth from the public rights-of-way unless Zayo Bandwidth consents to the City's *ultra vires* demands.

3.      Zayo Bandwidth seeks damages for the City's illegal and discriminatory conduct in regulating and limiting Zayo Bandwidth's access to the public rights-of-way and to recover the value of the assets it was illegally required to provide to the City and the maintenance services it was required to perform on those assets.  Zayo Bandwidth also seeks a declaration of the Parties' rights and obligations under the applicable state and federal laws, and requests an injunction prohibiting the City from interfering with Zayo Bandwidth's use and operation of its facilities within the City.  Finally, Zayo Bandwidth also seeks its costs and attorney's fees.

## SUBJECT MATTER JURISDICTION AND VENUE

4.      This Court has jurisdiction of these Counterclaims pursuant to Federal Rule of Civil Procedure 13, as compulsory counterclaims.

5.      This Court also has jurisdiction of these Counterclaims under 28 U.S.C. § 1331's general federal question jurisdiction.

6.      This Court also has jurisdiction of these Counterclaims under 28 U.S.C. § 1332, because the parties are citizens of different states and because the amount in controversy exceeds $75,000.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**PARTIES**

8.      Zayo Bandwidth is a limited liability company wholly owned by Zayo Group, LLC, a limited liability company organized under the laws of Delaware.  Zayo Group, LLC, in turn, is wholly owned by Zayo Group Holdings, Inc., a corporation organized and existing under the laws of Delaware.   Zayo Bandwidth is authorized to do, and does, business in the State. Zayo Bandwidth was initially formed as a joint venture between Memphis Light Gas & Water Division and Memphis Broadband under the name Memphis Networx, LLC.  For present purposes, "Zayo Bandwidth" means both Zayo Bandwidth LLC and all of its predecessors in interest.

9.      Zayo Bandwidth is a telecommunications company with a fiber optic telecommunications network, serving both Memphis and other regions.  Zayo Bandwidth has entered into certain agreements with various governmental and private entities for the use of public and private rights-of-way to install underground conduits, above-ground and underground fiber optic cables, and to provide certain telecommunications services.  Zayo Bandwidth's network provides telecommunications services to customers located in the City and elsewhere.

10.      Defendant City of Memphis is a political subdivision of the State of Tennessee. Memphis traces its current charter to 1879 when it was established as the Taxing District of Shelby County.  In 1891, the name "City of Memphis" was restored by Acts of 1891, ch. 229, §§ 1, 2.  In November 1966 the City of Memphis elected to undertake "home rule" pursuant to Article 11, § 9 of the Tennessee Constitution.

**APPLICABLE LAW**

**Applicable State And Municipal Laws**

11.      Tennessee state law provides that:

[a]ny . . . corporation organized for the purpose of transmitting

12

intelligence by . . . telephone, or other system of transmitting intelligence . . . which may be invented or discovered, *may construct, operate, and maintain* such telegraph, telephone, or other lines necessary for the speedy transmission of intelligence, *along and over the public highways and streets of cities and towns,* or across and under the waters, and over any lands or public works belonging to this state, and on and over the lands of private individuals, and upon, along, and parallel to any of the railroads, and on and over the bridges, trestles, or structures of such railroads [provided that] [t]he ordinary use of such public highways, streets, works, railroads, bridges, trestles, or structures shall not be thereby obstructed, nor the navigation of such waters impeded, and just damages shall be paid to the owners of such lands, railroads, and turnpikes, by reason of the occupation of the lands, railroads, and turnpikes by the telegraph or telephone corporations.

Tenn. Code Ann. §§ 65-21-201 *et seq.* (emphasis supplied).

12.    Further, in consideration of *the right-of-way over public property* . . . every telegraph or telephone corporation shall, in the case of war, insurrection, or civil commotion of any kind, and for the arrest of criminals, give immediate dispatch, at the usual rates of charge, to any message connected therewith of any officer of the state or of the United States.

Tenn. Code Ann. §§ 65-21-201 *et seq*. and § 65-21-107 (emphasis supplied).

13.    The State grants local municipalities, including the City of Memphis, limited authority to regulate access to the public rights-of-way within their jurisdiction by telecommunications providers like Zayo Bandwidth, but that authority extends only to those "reasonable police powers [necessary] to regulate the construction, maintenance, or operation of the [network] including the right to exact rentals for the use of its streets." Tenn. Code Ann. § 65-21-103. State law prohibits the City from taking any action beyond its reasonable police powers that would have the effect of prohibiting or limiting Zayo Bandwidth's ability to construct, maintain, or operate its telecommunications network within the City. Tenn. Code Ann. § 65-21-103.

14.    Any rent charged by the City must be "reasonable and imposed upon all telephone and telegraph companies without discrimination." Tenn. Code Ann. § 65-21-103.

Reasonable rental has expressly been defined as those fees that "*bear a reasonable relation to the cost to the City*" (emphasis added) of Zayo Bandwidth's use of the public rights-of-way. *See, e.g.*, *BellSouth Telecomms., Inc. v. City of Memphis*, 160 S.W. 3d 901, 914-915 (Tenn. Ct. App. 2004), *appeal den.* Jan. 4, 2005; *see also Level 3 Commc'ns, LLC v. City of Memphis*, 06-cv-2547-BBD, Docket No. 86 (W.D. Tenn. July 31, 2008).  Thus, any fees imposed by the City in excess of its reasonably incurred costs in regulating and maintaining the public rights-of-way utilized by Zayo Bandwidth are *ultra vires* and prohibited by State law.

15.     Accordingly, the complete extent of the City's authority under State law to charge Zayo Bandwidth fees for use of the public rights-of-way is limited to those fees within its "reasonable police powers," and such fees must "bear a reasonable relation to the costs" incurred by the City and must be nondiscriminatory.

16.     The courts of the State have held that fees charged by a city that are based on a percentage of a telecommunications company's gross revenue, as here, are not reasonable exercises of the City's police powers.  *See BellSouth v. Memphis,* 160 S.W.3d at 916 (holding that, under state law, any fee charged by the City under its police power must bear a reasonable relation to the cost to the City for the use and maintenance of the rights-of-way); *see also City of Chattanooga v. BellSouth Telecomms.*, No. E1999-01573-COA-R3-CV, 2000 WL 122199 (Tenn. Ct. App. 2000).

### Federal Law

17.     The Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 ("the Act"), 47 U.S.C. § 253(a), prohibits state and local authorities from creating "barriers to entry" into the market for telecommunications services.  Such barriers can take the form of rules, regulations, or legal requirements that "prohibit or have the effect of prohibiting the ability of any entity to provide interstate or intrastate

14

telecommunications services."  47 U.S.C. § 253(a).  A regulatory barrier does not need to be complete or insurmountable to violate the prohibition of § 253(a).  Any statute, rule, or regulation that purports to give a state or local agency unfettered discretion to deny a telecommunications provider seeking access to the public rights-of-way violates, and is therefore preempted by, § 253(a) and the Supremacy Clause, U.S. CONST. art. IV, cl. 2.

18.     From the general preemption effected by § 253(a), Congress carved out a narrow exception to clarify the continued authority of state and local governments to manage the time, place, and manner by which public utilities may access the public rights-of-way.

19.     State and local statutes, ordinances, and other legal requirements relating to use of the public rights-of-way are only exempt from the general prohibition effected by 47 U.S.C. § 253(a) if those rules are (1) directly related to management of the public rights-of-way; and (2) are imposed and enforced equally on all utility users of the public rights-of-way. *See* 47 U.S.C. § 253(c).

20.     Telecommunications providers cannot be denied access to the public rights-of-way for failure to pay a fee unless that fee is limited to fair and reasonable compensation for the company's actual use of the rights-of-way.  47 U.S.C. § 253(c).  Accordingly, any fee or charge that is in excess of reasonable, actual costs incurred by the state or local government as a result of, or not at least directly based on, the telecommunications provider's use of the public rights-of-way cannot be "compensation" and is therefore prohibited by § 253.

## FACTUAL ALLEGATIONS
### Zayo Bandwidth's Statewide Franchise

21.     Zayo Bandwidth is a limited liability company "organized for the purpose of transmitting intelligence" by a means of communication as described by Tenn. Code Ann. §§ 65-21-201.  As such, Zayo Bandwidth has been granted the right to "construct, operate, and

maintain" its network facilities "along and over the public highways and streets" within the State, including within the City of Memphis.  The State's grant of this right to Zayo Bandwidth was not conditioned upon the payment of any usage fees or rents to the State, the City, or any other person or entity, and Zayo Bandwidth cannot be required to pay such usage fees or rents.

22.     Zayo Bandwidth was granted authority to do business in the State of Tennessee on November 8, 1999.  On August 9, 2001, the Tennessee Regulatory Authority ("TRA"), in TRA Docket No. 99-0909, granted Memphis Networx (now Zayo Bandwidth) a Certificate of Public Convenience and Necessity ("CPCN") to provide telecommunications services on a statewide basis.  Accordingly, Zayo Bandwidth is a "public utility" and a "telecommunications service provider" as such terms are defined in Tenn. Code Ann. § 65-4-101.

23.     By virtue of its CPCN and Tenn. Code Ann. §§ 65-21-107, *et seq.*, Zayo Bandwidth holds a perpetual, statewide franchise from the State.  That perpetual, statewide franchise gives Zayo Bandwidth the right to construct its fiber optic network along, above, upon, and under the public rights-of-way within the State.  Zayo Bandwidth is entitled to exercise this franchise without payment to the State or any other governmental entity.

24.     The State franchise granted to Zayo Bandwidth and other telecommunications providers advances the public policies of the State by increasing the availability of modern telecommunications services to the residents, businesses, educational institutions and governmental agencies throughout the State through increased competition amongst providers of telecommunications services.

25.     Zayo Bandwidth accepted the statewide franchise by affirmatively applying for the CPCN granted by the TRA, and by constructing and maintaining its telecommunications network throughout the State.  In reliance on the franchise granted by the State, and at great

expense and risk to itself, Zayo Bandwidth expended many millions of dollars constructing, maintaining and operating its network within the State.  The governments, schools, businesses and citizens of the State have benefited from Zayo Bandwidth's installation and operation of its network within the State.

26.     Zayo Bandwidth has agreed to provide the requisite telecommunications services called for in times of war, insurrection, or civil commotion and is prepared to carry any message on behalf of any State or federal officer in those regards.  Zayo Bandwidth has therefore fulfilled, or stands ready to fulfill, all obligations and duties required of it by the statewide franchise.

27.     By accepting the statewide grant, Zayo Bandwidth has obtained a vested contractual and property right to construct its telecommunications network along, upon, above, under and over the roads and highways within the limits of the State, including those utilizing public rights-of-way located in the City of Memphis.

### Zayo Bandwidth's Relationship with the City

28.     If Zayo Bandwidth had not entered into the Franchise, it would have been prohibited from constructing its network facilities in the public rights-of-way, and would therefore have been unable to implement and use its network.  Zayo Bandwidth's construction and utilization of its telecommunications network in the City and elsewhere would have been jeopardized by a failure to secure the necessary access to the public rights-of-way in the City.

29.     In 1999, Zayo Bandwidth began negotiations with the City to obtain authorization to construct a portion of Zayo Bandwidth's telecommunications network along, above, upon, and/or under the public rights-of-way within the City limits.

30.     The City claimed absolute discretion to grant or deny applications for construction permits by telecommunications providers like Zayo Bandwidth which seek to install

their facilities within the public rights-of-way controlled by the City.  The City exercised its discretion to grant or deny access to the public rights-of-way controlled by the City to prohibit, or effectively prohibit, the ability of Zayo Bandwidth and other telecommunications providers to enter the market for interstate and intrastate telecommunications services in Memphis.  On information and belief, the City has used its claimed discretion to deny, or effectively deny, the ability of other entities to enter the market for interstate or intrastate telecommunications services in Memphis.

31.     When Zayo Bandwidth initially approached the City for the purpose of gaining access to the rights-of-way in Memphis, it was informed that it would not be allowed to install its network facilities on the public rights-of-way unless and until it entered into a written agreement incorporating the City's unlawful telecommunications franchise ordinance, which included requirements that Zayo Bandwidth (1) furnish the City with initial consideration in the form of multiple optical fibers, conduits, and annual maintenance (or the fair market value equivalent payment to the City); (2) make annual payments to the City based upon a percentage of its gross revenues; and (3) accept numerous other non-fee legal and technical provisions (e.g., a termination provision allowing the City to take possession of Zayo Bandwidth's network and business).

32.     This written agreement took the form of a Telecommunications Franchise Contract ("Franchise").  A true and correct copy of the Franchise is attached hereto as Exhibit 1, and is incorporated herein by reference.  The Franchise was adopted by the City of Memphis in Ordinance No. 4744.  The Franchise incorporates by reference the terms of Ordinance No. 4404, which sets forth conditions for franchisees wishing to operate telecommunications services in the City of Memphis.  On information and belief, other telecommunications providers were not

required to agree to the terms of Ordinance No. 4404 to create telecommunications networks in the City.

33.     Zayo Bandwidth was compelled to enter into the Franchise with the City on January 3, 2001, as a result of the City's threat to deny the permits Zayo Bandwidth needed to install its network facilities in Memphis.  Such a denial would have resulted in serious harm to Zayo Bandwidth's business in the City and elsewhere.  By its terms, the Franchise will not expire until January 3, 2021.

34.     Following execution of the Franchise, the City issued Zayo Bandwidth (or its contractors) the requisite construction permits that allowed Zayo Bandwidth to construct its network in the City.  Zayo Bandwidth's network consists primarily of underground and above-ground fiber optic cables.  Each fiber optic cable in turn consists of numerous individual fiber optic strands.  The underground cables are installed in conducts that are typically buried approximately 3 feet below the surface of the road and are installed using a variety of techniques, including trenching and boring.  In addition to the conduits, Zayo Bandwidth also installed manholes, in which necessary equipment would be located, and where technicians could gain access to the network.  Zayo Bandwidth's network also consists in part of aerial (overhead) wires which are attached to utility poles within the rights-of-way.  All of this construction was performed by fully qualified contractors in compliance with all applicable local, state and other regulations and building codes.

35.     On information and belief, Zayo Bandwidth promptly repaired any damage that its construction caused in the public rights-of-way, and returned the rights-of-way to a condition as good as or better than when Zayo Bandwidth first accessed those rights-of-way.

36.     The City has consistently maintained that it has the authority to impose the fees

and conditions set forth in the Franchise.  Ordinances Nos. 4404 and 4744 set forth the terms and conditions that the City claims it is authorized to impose on Zayo Bandwidth as a franchisee.

37.    The City has purported to revoke the Franchise and announced its intent to seize Zayo Bandwidth's network due to Zayo Bandwidth's refusal to accede to the City's illegal and unreasonable demands.  Zayo Bandwidth is therefore concerned that the City will take unilateral action that would harm Zayo Bandwidth's network facilities, or otherwise compromise Zayo Bandwidth's ability to provide service in Memphis and elsewhere.

38.    On information and belief, the City intends to withhold the necessary permits and other permissions required for Zayo Bandwidth to do regular and routine maintenance on its network facilities located in the public rights-of-way.  Any such interference would impair Zayo Bandwidth's ability to provide telecommunications services, and would do Zayo Bandwidth irreparable harm not compensable by money damages.

### Provisions of the Franchise

*Initial Compensation Requirements Imposed on Zayo Bandwidth by the City*

39.    The Franchise purportedly grants Zayo Bandwidth the right to encroach and occupy the public rights-of-way in Memphis for the purpose of constructing, maintaining, and operating fiber optic lines and cables.  Under the terms of the Franchise, Zayo Bandwidth was granted permission to install conduit and fiber optic cables along the various routes within the City.

40.    The Franchise and the incorporated Ordinance No. 4404 require Zayo Bandwidth to pay certain "Initial Compensation" to the City as a condition of operation in the City. Ordinance No. 4404 § 20.

41.    Specifically, the City required, pursuant to Ordinance No. 4404, § 20, that Zayo Bandwidth permit the City to use up to 200 connecting locations in Zayo Bandwidth's network,

allow the City perpetual use without cost of a substantial portion of its network, and maintain at Zayo Bandwidth's expense this portion of its network.  Zayo Bandwidth was required to make multiple fibers available for the City's use, and to spend its own funds on maintaining those fibers.  The value of the network and fibers wrongfully taken by the City from Zayo Bandwidth exceeds $3,000,000.

42.    The City's Initial Compensation requirements exceeded the City's authority under state and federal law.  Ordinance No. 4404 § 20(A).  Those requirements were imposed under color of state law.

43.    The Initial Compensation is not intended to compensate the City for its administrative costs incurred in regulating Zayo Bandwidth's access to the public rights-of-way within the City limits and can only be justified if it is *reasonably related to the actual costs* incurred by the City in maintaining the public rights-of-way used by Zayo Bandwidth.

44.    Section 20(A) of Ordinance No. 4404 expressly states that the Initial Compensation is imposed as "additional Compensation for any Franchise granted hereunder," and Section 20(B) states that the Initial Compensation is imposed "as a further consideration for the Franchise herein granted hereunder."  The Initial Compensation is therefore not reimbursement of the City's costs.

45.    The Initial Compensation is not reasonably related to the City's actual costs incurred in maintaining the public rights-of-way utilized by Zayo Bandwidth, but is, instead, a "rent" charged by the City without legal authority.

*General Compensation Requirements Imposed on Zayo Bandwidth by the City*

46.    The Franchise and the incorporated Ordinance No. 4404 require Zayo Bandwidth to pay 5% of Zayo Bandwidth's gross revenues for each year of the Franchise, *see* Ordinance No. 4404 § 21.1, as "General Compensation."

47.     The fees in Section 21.2 of the Franchise are "exclusive of and in addition to all special assessments and taxes of whatever nature, including, but not limited to, ad valorem taxes."  Ordinance No. 4404 § 21.2.

48.     The 5% gross revenue fee required by the Franchise is not intended to compensate the City for its administrative costs incurred in regulating Zayo Bandwidth's access to the public rights-of-way within the City limits.  Accordingly, that fee can only be justified if it is *reasonably related to the actual costs* incurred by the City in maintaining the public rights-of-way used by Zayo Bandwidth.

49.     Section 21.1 of Ordinance No. 4404 expressly states that the fee is imposed to recognize that "the grant to Grantee of the use of said public . . . rights-of-way is a valuable property right, without which the Grantee would be required to invest substantial capital in Public Right-of-Way costs and acquisitions."  Section 21.1 characterizes the 5% gross revenue fee as "general compensation," not reimbursement of the City's costs.

50.     Further evidence of the failure of the fees to reasonably relate to the City's true costs in policing Zayo Bandwidth's use of the public rights-of-way includes:

>   A.     That Zayo Bandwidth is charged the same fees every year, regardless of whether the City actually incurs any maintenance costs related to Zayo Bandwidth's network.
>
>   B.     That Section 19 of Ordinance No. 4404 requires Zayo Bandwidth to indemnify the City for "all damages, costs, losses or expenses...for the repair,  replacement, or restoration of City's property, equipment, materials, structures and facilities which are damaged, destroyed or found to be defective as a result of [Zayo Bandwidth's] acts or omissions." Accordingly, if any street or other public right of way was actually damaged, or required physical rehabilitation as a result of the installation or presence of Zayo Bandwidth's network facilities, Zayo Bandwidth is required by the Franchise to pay such costs of repair, replacement, or restoration in full, without consideration of, or credit for, fees ostensibly collected by the City for maintaining the public rights-of-way.

51.     Accordingly, for the reasons stated above, the fees under the Franchise were not

reasonably related to the costs incurred by the City in regulating and maintaining the public rights-of-way utilized by Zayo Bandwidth. The fees are, therefore, not a legitimate "fee" levied pursuant to the City's police powers, but are, instead, a "rent" charged by the City without legal authority.

52. On information and belief, the City is reimbursed, in whole or in part, by the State of Tennessee for all or substantially all, of the City's cost of maintaining the streets and roadways along which Zayo Bandwidth's network is located.

53. On information and belief, the fees that Zayo Bandwidth is required to pay pursuant to the Franchise differ from and exceed the fees charged by the City for use of the public rights-of-way by Zayo Bandwidth's competitors. The fees were imposed by the City under the color of state law.

54. The precise value of the assets taken by the City pursuant to the Franchise, services required to be provided by Zayo Bandwidth without compensation, and other costs incurred by Zayo Bandwidth as a result of the City's *ultra vires* acts will be determined at trial.

*Other Unlawful Provisions Imposed on Zayo Bandwidth by the City*

55. In addition to the fees outlined above, the Franchise, and the incorporated Ordinance No. 4404, imposed a number of other obligations and restrictions on Zayo Bandwidth (collectively, "Non-Fee Requirements") that exceeded the City's authority under state and federal law and which interfered with Zayo Bandwidth's duties and obligations under state and federal law, and that created a significant barrier to Zayo Bandwidth's ability to compete effectively in the market for telecommunications services in the State and elsewhere, including:

    A. Requiring Zayo Bandwidth to divulge proprietary and confidential business information to the City, *see* Ordinance No. 4404, § 22;

    B. Prohibiting Zayo Bandwidth from leasing or subleasing its property to providers

or resellers of similar services, *see* Ordinance No. 4404, § 26;

C. The City's assertion that it has a consent right that could prohibit Zayo Bandwidth from transferring any interest in its Franchise rights or assets without the City's prior consent, *see* Ordinance No. 4404, §§ 26, 28.3;

D. The City's reserved right to seize Zayo Bandwidth's network if the City believes Zayo Bandwidth has violated the Franchise, *see* Ordinance No. 4404, § 28.3;

E. Reserving the right to revoke Zayo Bandwidth's permits without compensation or damages, *see* Ordinance No. 4404, §§ 7, 14;

F. Reserving the right to force Zayo Bandwidth to relocate or remove its system, or any portion thereof, within 48 hours at the City's sole discretion without compensation or damages, *see* Ordinance No. 4404, § 14;

G. Requiring Zayo Bandwidth to obtain a performance bond from a City-approved guarantor in the amount of $100,000 in favor of the City, *see* Ordinance No. 4404, § 17;

H. Requiring Zayo Bandwidth to maintain at least $5,000,000 in insurance at its own expense, with no less than $1,000,000 as insurance for damage in any one incident, in policies that name the City as an additional insured, *see* Ordinance No. 4404, § 18;

I. Requiring Zayo Bandwidth to indemnify the City for all damages, costs, losses or expenses arising out of any aspect of the franchise, even if the damages arose from the City's own conduct, and to pay any related judgments obtained against the City, *see* Ordinance No. 4404, § 19.

56.     Upon information and belief, other telecommunications providers are allowed access to the public rights-of-way on more favorable terms than those imposed on Zayo Bandwidth, including more favorable insurance and bond requirements.  The City's discriminatory conduct has harmed Zayo Bandwidth and other providers and is not competitively neutral.  The City has imposed these obligations under color of state law.

**The City's Purported Revocation of the Franchise**

57.     On August 31, 2007, the City wrote to Zayo, demanding, since that Zayo had, *inter alia*, failed to pay the General Compensation fees in full or provide audited statements on its revenues, it was exercising its "election" to seize Zayo's "system" pursuant to Section 28.3 of

24

Ordinance No. 4404.  The City also asserted that Zayo had improperly transferred the Franchise to another entity, Communications Infrastructure Investments ("CII"), without the City's prior consent.

58.     Zayo responded on September 16, 2007 that it was not in breach of any lawful obligations under Ordinance No. 4404, and that the fees purportedly due under that Ordinance were invalid and unenforceable under *BellSouth v. Memphis*.  Zayo also advised the City that it had not transferred the franchise; rather, CII had purchased all of the equity interest in Memphis Networx, Zayo's predecessor entity.  Hence, the City had no purchase, seizure, or other right with respect to Zayo's network.  Nevertheless, Zayo petitioned the Council for approval of the change of control of Memphis Networx.  The petition remains pending.

## COUNTERCLAIM I
## Ultra Vires Acts Under State Law

59.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60.     Zayo Bandwidth operates in the State pursuant to its CPCN and a statewide franchise granted pursuant to Tenn. Code Ann. § 65-21-201, *et seq.* and Tenn. Code Ann. § 65-21-107, as amended.

61.     The State has never delegated to the City the power to impose a franchise requirement on Zayo Bandwidth or any other telecommunications provider.

62.     The City claims the authority to impose a franchise through Ordinance Nos. 4404 and 4744, the latter of which incorporates and contains the Franchise.

63.     Zayo Bandwidth's access to the public rights-of-way within the City was conditioned upon Zayo Bandwidth's entering into the Initial Compensation, General Compensation, and Non-Fee Requirements of the Franchise.  If Zayo Bandwidth had not agreed

to the Initial Compensation, General Compensation, and Non-Fee Requirements demanded by the Franchise, including but not limited to those identified in this Complaint, the City would not have permitted Zayo Bandwidth to construct its network facilities.  Refusal to allow Zayo Bandwidth to construct its network would have significantly interfered with Zayo Bandwidth's ability to compete with other providers of telecommunications services.  Thus, the City would have prevented or significantly impeded Zayo Bandwidth's entry into the market for telecommunications services in the State.

64.     The City has stated its intention to condition Zayo Bandwidth's present and future access and use of the public rights-of-way on obligations and requirements the same as or substantially similar to those set forth in the Franchise.  Denial of access by the City would significantly interfere with Zayo Bandwidth's ability to compete with other providers of telecommunications services.  Thus, the City has stated a clear intent to prevent or significantly impede Zayo Bandwidth's continued presence in the market for telecommunications services in the state.

65.     Accordingly, this Court should declare the Initial Compensation, General Compensation, and Non-Fee Requirements of the Franchise and Ordinances Nos. 4404 and 4744 invalid, *ultra vires* and void *ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way.

**COUNTERCLAIM II**
**Impairment of Contract and Due Process Rights**

66.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 65 as if fully set forth herein.

67.     Zayo Bandwidth operates in the State pursuant to its CPCN and a statewide

franchise granted pursuant to Tenn. Code Ann. § 65-21-201, *et seq.* and Tenn. Code Ann. § 65-21-107, as amended.

68.     Zayo Bandwidth has, at great risk and expense, constructed (and continues to construct) a telecommunications network that has and continues to be used by Zayo Bandwidth to provide telecommunications services to the residents, businesses, schools and government agencies in the State and elsewhere.

69.     Zayo Bandwidth, by accepting the statewide franchise, has obtained a vested contractual and property right to construct its telecommunications facilities along, upon, above, under and over the roads and highways within the State.

70.     The statewide franchise granted to and currently exercised by Zayo Bandwidth imposes no fees, charges or restrictions on Zayo Bandwidth, is not limited in scope; and does not require any further action by the City, or require Zayo Bandwidth to apply to the City for its exercise of any further action.

71.     Zayo Bandwidth's statewide franchise is a constitutionally recognized contract protected from interference or impairment by the State or any subdivision thereof.

72.     The City demands Initial Compensation, General Compensation, and Non-Fee Requirements from Zayo Bandwidth that greatly exceed those required by or permitted under state law, and that are contrary to Zayo Bandwidth's statewide franchise.

73.     Because, and to the extent that, the obligations that the City has imposed or seeks to impose on Zayo Bandwidth conflict with and exceed Zayo Bandwidth's obligations under its statewide franchise, these obligations impair and abrogate Zayo Bandwidth's contractual rights in violation of U.S. CONST. art. I, § 10 and TENN. CONST. art. I, § 20.  In addition, the City has impaired and seeks to impair Zayo Bandwidth's vested property rights, thereby violating Zayo

Bandwidth's rights to due process under U.S. CONST. amend. XIV and TENN. CONST. art. I, § 8.

74.     Accordingly, this Court should declare the provisions of the Franchise requiring Initial Compensation, General Compensation, and Non-Fee Requirements invalid and *void ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way.

**COUNTERCLAIM III**
**Preemption of Locally Imposed Unlawful Compensation By State Law**

75.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76.     Tenn. Code Ann. § 65-21-103 grants the City limited authority to regulate Zayo Bandwidth's use of the public rights-of-way.  The City's authority is expressly limited to the reasonable exercise of its police powers for the purpose of managing the public rights-of-way within its jurisdiction.  The fees charged by the City under its police powers must bear a reasonable relation to the City's cost of policing the use by Zayo Bandwidth of the City's public rights-of-way.

77.     The Initial Compensation and General Compensation fees imposed on Zayo Bandwidth by the Franchise in Ordinance No. 4404, Sections 20 and 21, and that the City seeks to continue levying, are unlawful because they are not reasonably related to the City's cost of policing use by Zayo Bandwidth of the City's public rights-of-way and therefore exceed the City's limited police powers.

78.     Accordingly, this Court should declare the Initial Compensation and General Compensation portions of the Franchise invalid and *void ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way.

**COUNTERCLAIM IV**
**Preemption of Locally Imposed Non-Fee Requirements by State Law**

79.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 78 as if fully set forth herein.

80.     Pursuant to Tenn. Code Ann. §§ 65-21-103 and 65-4-201 *et seq.*, the State has exclusive jurisdiction with respect to the determination of which entities will be issued CPCNs and granted authority to construct telecommunications facilities and provide telecommunications services within the State.  The State has granted Zayo Bandwidth and similarly situated telecommunications service providers a perpetual franchise to occupy the public rights-of-way in the State of Tennessee.

81.     Tenn. Code Ann. § 65-21-103 authorizes local governments, including the City, to reasonably exercise their police powers for the purpose of policing Zayo Bandwidth's use of the public rights-of-way within their jurisdictions.  Any action by the City in excess of its police powers is unauthorized under State law.

82.     The following provisions of the Franchise and any similar legal requirement or obligation imposed by the City are preempted by State law:

> **Sections 4.2, 5, 21 and 22.3**, which require Zayo Bandwidth to report to the City information regarding its facilities on City approved forms and at City mandated intervals, and requires Zayo Bandwidth to submit a report prepared by a CPA or certified engineer;

> **Section 22.5**, which requires Zayo Bandwidth to respond to any inquiry from the City regarding the "operation" of Zayo Bandwidth's facilities in the City's rights-of-way;

> **Section 14**, which purports to grant the City essentially unfettered authority to require Zayo Bandwidth to relocate its facilities

> **Section 17**, which requires Zayo Bandwidth to obtain a performance bond from a City-approved guarantor in the amount of $100,000 in favor of the City;

> **Section 18**, which requires Zayo Bandwidth to maintain insurance at minimum

amounts specified by the City and on terms and conditions subject to the City's approval;

**Section 19**, which requires Zayo Bandwidth to indemnify the City for all damages, costs, losses or expenses arising out of defects in the City's property, equipment, materials, structures and facilities, and also for any claim that arises out of the operation of the Franchise;

**Sections 26 and 28.1**, which prohibit Zayo Bandwidth from transferring any interest in Franchise rights or assets without the City's prior consent.

**Section 28.3**, which permits the City to purchase Zayo's network at its election upon expiration of the Franchise Agreement or upon transfer of the franchise.

83.     Accordingly, this Court should declare these sections of the Franchise invalid and *void ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way.  This Court should further declare that the City has no authority to require Zayo to sell its network to the City, and that, in any event, because Zayo has not transferred the franchise, the Franchise Agreement does not permit the City to exercise any such option at this time.

## COUNTERCLAIM V
## <u>Discriminatory Treatment Prohibited by State Law</u>

84.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 83 as if fully set forth herein.

85.     On information and belief, other telecommunications providers have constructed telecommunications facilities, including fiber optic networks with accompanying facilities, along, upon, above, under and over the public rights-of-way in the City.

86.     On information and belief, the City has not required some or all of the other telecommunications providers to enter into a Franchise (or similar agreement), or to otherwise satisfy the onerous terms and conditions that the Franchise imposed on Zayo Bandwidth as a

condition of constructing and maintaining facilities in the public rights-of-way in the City.

87.     The City required Zayo Bandwidth to enter into the Franchise as a condition of Zayo Bandwidth constructing, owning, operating, and maintaining facilities in the public rights-of-way for the purpose of providing telephone and telecommunications services.  However, the City did not impose similar fees, restrictions and obligations on other telecommunications companies.  Thus, the City has imposed and seeks to impose requirements on Zayo Bandwidth that are discriminatory and competitively biased and have the effect of prohibiting Zayo Bandwidth from providing telecommunications services in the City of Memphis, in violation of Tenn. Code Ann. § 65-21-103.

88.     Accordingly, this Court should declare the Initial Compensation, General Compensation, and Non-Fee Requirements terms of the Franchise invalid and *void ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way.

### COUNTERCLAIM VI
### Violation of 47 U.S.C. § 253 Through Levying Of Initial Compensation and General Compensation That Exceed Fair And Reasonable Compensation

89.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 88 as if fully set forth herein.

90.     The Initial Compensation and General Compensation demanded by the City, including but not limited to that identified in this Complaint, were imposed on Zayo Bandwidth as a required precondition of Zayo Bandwidth being granted access to the public rights-of-way in the City for the purpose of providing telecommunications services in the State, and elsewhere in the United States, and as a condition of Zayo Bandwidth's continued occupancy of the public rights-of-way.  The City claimed and claims authority under Tennessee law, including Tenn. Code Ann. § 65-21-103, to require the Initial Compensation and General Compensation required

by the Franchise as conditions for accessing and occupying the public rights-of-way within the City's control.

91.     The City denied and threatens to deny Zayo Bandwidth access to the rights-of-way within the City's control until Zayo Bandwidth agreed to pay, and did pay, the Initial Compensation and General Compensation required by the Franchise, including but not limited to that identified in this Complaint.  This denial of access and implied threat of eviction prohibited or had the effect of prohibiting Zayo Bandwidth's ability to provide interstate and intrastate telecommunications services in the State and elsewhere, in violation of 47 U.S.C. § 253(a).

92.     The Initial Compensation and General Compensation demanded by the City exceed the actual costs incurred by the City as a result of Zayo Bandwidth's access, use, and occupancy of the rights-of-way, and therefore the Initial Compensation and General Compensation are not fair and reasonable compensation for Zayo Bandwidth's use of the public rights-of-way controlled by the City, and are therefore preempted by 47 U.S.C. § 253(a) notwithstanding application of 47 U.S.C. § 253(c).

93.     Additionally, or in the alternative, the Initial Compensation and General Compensation required by the City are not related to, nor based on, the actual costs incurred by the City as a result of Zayo Bandwidth's access, use, and occupancy of the public rights-of-way controlled by the City, and therefore those rents, fees, in-kind compensation and other payments are not fair and reasonable compensation for Zayo Bandwidth's use of the public rights-of-way, and are therefore preempted by 47 U.S.C. § 253(a) notwithstanding application of 47 U.S.C. § 253(c).

94.     Additionally, or in the alternative, the rents, fees, in-kind compensation and other payments required by the City are not related to, nor based on, Zayo Bandwidth's actual use of

the public rights-of-way controlled by the City, and therefore those rents, fees, in-kind

compensation and other payments are not fair and reasonable compensation for Zayo

Bandwidth's use of the public rights-of-way, and are therefore preempted by 47 U.S.C. § 253(a)

notwithstanding application of 47 U.S.C. § 253(c).

**COUNTERCLAIM VII**
**Violation of 47 U.S.C. § 253 By Imposing Non-Fee Requirements**
**And Other Obligations And Requirements That Exceed**
**The City's Limited Authority To Manage The Rights-Of-Way**

95.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 94 as if

fully set forth herein.

96.     The Non-Fee Requirements and other obligations and requirements imposed on

Zayo Bandwidth by the City, including but not limited to those identified in this Complaint, are

conditions to Zayo Bandwidth's ability to access the public rights-of-way controlled by the City.

The City claims authority under Tennessee law, including Tenn. Code Ann. § 65-21-103, to

demand the Non-Fee Requirements and other obligations and requirements as conditions on

Zayo Bandwidth's right to access and occupy the public rights-of-way that the City controls.

97.     The City denied Zayo Bandwidth access to the public rights-of-way until Zayo

Bandwidth agreed to provide the Non-Fee Requirements and other obligations and requirements

demanded by the City, including but not limited to those identified in this Complaint.  This

denial of access and threat of future denial prohibited or had the effect of prohibiting Zayo

Bandwidth's ability to provide interstate and intrastate telecommunications services in the State

and elsewhere, in violation of 47 U.S.C. § 253(a).

98.     The Non-Fee Requirements and other obligations and requirements imposed by

the City, including but not limited to those identified in this Complaint, exceed the City's

legitimate authority over the time, place, and manner by which Zayo Bandwidth may gain access

33

to the public rights-of-way, and those Non-Fee Requirements and other obligations and requirements are therefore preempted by 47 U.S.C. § 253(a) notwithstanding application of 47 U.S.C. § 253(c).

### COUNTERCLAIM VIII
### Violation of 47 U.S.C. § 253 Through Levying Of Rents, Fees, In-Kind Compensation, And Other Payments In A Discriminatory And Non-Competitively Neutral Manner

99.     Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 98 as if fully set forth herein.

100.    The Initial Compensation and General Compensation imposed by the City, including but not limited to that identified in this Complaint, was imposed on Zayo Bandwidth as a required precondition of Zayo Bandwidth being granted access to the public rights-of-way in the City for the purpose of providing telecommunications services in the State and elsewhere, and as a condition of Zayo Bandwidth's continued occupancy of the public rights-of-way.  The City claimed and claims authority under Tennessee law, including Tenn. Code Ann. § 65-21-103, to demand the Initial Compensation and General Compensation required by the Franchise as conditions of Zayo Bandwidth's access to and occupation of the public rights-of-way within the City's control.

101.    The City denied Zayo Bandwidth access to the rights-of-way within the City's control until Zayo Bandwidth agreed to pay, and did pay, the Initial Compensation and General Compensation required by the Franchise, including but not limited to that identified in this Complaint.  This denial of access and threat of eviction prohibited or had the effect of prohibiting Zayo Bandwidth's ability to provide interstate and intrastate telecommunications services in the State and elsewhere, in violation of 47 U.S.C. § 253(a).

102.    The Initial Compensation and General Compensation demanded by the City are

34

greater than, and materially different from the rents, fees, and other compensation that Zayo

Bandwidth's competitors were required to provide for accessing the rights-of-way under the

City's control.  This disparate treatment places Zayo Bandwidth, and other entities, at a

competitive disadvantage in the market for telecommunications services, is discriminatory and

not competitively neutral, and that Initial Compensation and General Compensation required by

the Franchise is therefore not saved from preemption by application of 47 U.S.C. § 253(c).

## COUNTERCLAIM IX
### Violation of 47 U.S.C. § 253 Through Imposition Of Non-Fee Requirements and Other <u>Obligations and Requirements In A Discriminatory And Non-Competitively Neutral Manner</u>

103.    Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 102 as if

fully set forth herein.

104.    The Non-Fee Requirements imposed on Zayo Bandwidth by the City, including

but not limited to those identified in this Complaint, are conditions to Zayo Bandwidth's ability

to access the public rights-of-way controlled by the City.  The City claims authority under

Tennessee law, including Tenn. Code Ann. § 65-21-103, to impose the Non-Fee Requirements

and other obligations and requirements as conditions on Zayo Bandwidth's right to access and

occupy the public rights-of-way that the City controls.

105.    The City denied Zayo Bandwidth access to the public rights-of-way until Zayo

Bandwidth agreed to comply with the Non-Fee Requirements and other obligations and

requirements demanded by the City, including but not limited to those identified in this

Complaint.  This denial of access and threat of future denial prohibited or had the effect of

prohibiting Zayo Bandwidth's ability to provide interstate and intrastate telecommunications

services in the State and elsewhere, in violation of 47 U.S.C. § 253(a).

106.    The Non-Fee Requirements and other obligations and requirements imposed on

Zayo Bandwidth by the City, including but not limited to those identified in this Complaint, are discriminatory and are not imposed in a competitively neutral manner on Zayo Bandwidth and other entities participating in, or seeking to enter the market for, interstate and intrastate telecommunications services in the State and elsewhere.  This disparate treatment places Zayo Bandwidth and others at a competitive disadvantage in the market for telecommunications services, and those Non-Fee Requirements and other obligations and requirements are therefore preempted by 47 U.S.C. § 253(a) notwithstanding application of 47 U.S.C. § 253(c).

## COUNTERCLAIM X
### Violation Of The Dormant Commerce Clause Through
### Imposition Of An Undue Burden On Interstate Commerce

107.   Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 106 as if fully set forth herein.

108.   The actions of the City, including demanding the Initial Compensation, General Compensation, Non-Fee Requirements, and other requirements imposed on Zayo Bandwidth and other providers of interstate telecommunications services, as described in this Complaint, have unduly burdened and interfered with interstate commerce, and therefore exceed the limited authority of the State, and all of its subservient officers, departments, and jurisdictions, including the City, to exert their will upon such interstate commerce, as defined by Article I, § 8, cl.3 of the United States Constitution.

## COUNTERCLAIM XI
### Violation Of Zayo Bandwidth's Rights Under
### The Fourteenth Amendment Of The United States Constitution

109.   Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 108 as if fully set forth herein.

110.   The actions of the City as described herein, including the imposition of Initial

Compensation, General Compensation, Non-Fee Requirements, and other demands and requirements imposed on Zayo Bandwidth, as described in this Complaint, have violated Zayo Bandwidth's rights to due process and the equal protection of law as secured by the Fourteenth Amendment.

## COUNTERCLAIM XII
### Violation Of 42 U.S.C. § 1983 Through Deprivation of Zayo Bandwidth's Rights Under The Constitution and Laws of the United States

111.    Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 110 as if fully set forth herein.

112.    Title 42 U.S.C. § 1983 prohibits any person, including the City, from depriving any citizen of the United States including Zayo Bandwidth of any of the "rights, privileges, or immunities secured by the Constitution and laws" of the United States while acting "under color of law."

113.    At all times relevant hereto, the City acted "under color of law," including, without limitation, under the color of Tenn. Code Ann. § 65-21-103.  The City's actions as alleged herein, individually or collectively, violated, continue to violate, and will violate Zayo Bandwidth's rights, privileges, and immunities secured by 47 U.S.C. § 253, and the Supremacy and Commerce Clauses and the Fourteenth Amendment of the United States Constitution, giving rise to a cause of action under 42 U.S.C. § 1983.

114.    Zayo Bandwidth has suffered damages as a result of the deprivation of its rights by the City, in violation of 42 U.S.C. § 1983.

## COUNTERCLAIM XIII
### Unjust Enrichment and Quantum Meruit Under Tennessee Law

115.    Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 114 as if fully set forth herein.

116.    The City has demanded, and Zayo Bandwidth has provided, Initial Compensation and Non-Fee Requirements, including but not limited to those identified in this Complaint, that far exceed what the City is legally permitted to demand from Zayo Bandwidth for access to the public rights-of-way.  Zayo Bandwidth conferred a benefit on the City through the payment of the Initial Compensation and provision of Non-Fee Requirements.

117.    The City accepted and has unjustly retained the Initial Compensation and Non-Fee Requirements extracted from Zayo Bandwidth.  The City has enjoyed the use of the fiber assets and free services included among the Initial Compensation and Non-Fee Requirements, and other benefits of value including but not limited to those identified in this Complaint, and Zayo Bandwidth has been denied the use and benefit of those assets.

118.    Allowing the City to retain the Initial Compensation and Non-Fee Requirements already delivered by Zayo Bandwidth would be inequitable and inconsistent with the principles of justice.

### COUNTERCLAIM XIV
#### Permanent Injunction

119.    Zayo Bandwidth hereby incorporates by reference paragraphs 1 through 118 as if fully set forth herein.

120.    The City has manifested an intent to interfere with, damage or destroy Zayo Bandwidth's network facilities, including as described in paragraph 57 above.  Such interference, damage, or destruction would cause Zayo Bandwidth irreparable harm, would not be compensable by money damages, and would be contrary to the public interest.

121.    The City has also manifested an intent to revoke the Franchise and seize Zayo Bandwidth's network and/or withhold the necessary permits and other permissions required for Zayo Bandwidth to do regular and routine maintenance on its network facilities located in the

public rights-of-way.  Such interference would cause Zayo Bandwidth irreparable harm, would not be compensable by money damages, and would be contrary to the public interest.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Counter-Plaintiff Zayo Bandwidth respectfully requests that the Court:

1. **Declare** that the Initial Compensation, General Compensation, and Non-Fee Requirements that the City requires Zayo Bandwidth to provide as a condition for obtaining permits and access to the public rights-of-way within the City for purposes of constructing Zayo Bandwidth's telecommunications network, and that the City seeks to impose as a condition of Zayo Bandwidth's continued occupancy and use of these rights-of-way, violate and are therefore preempted by Tennessee law, including Tenn. Code Ann. § 65-21-103;

2. **Declare** that the City was and is without authority to require Zayo Bandwidth to enter into the provisions of the Franchise demanding Initial Compensation, General Compensation, and Non-Fee Requirements as a condition for obtaining permits and access to the public rights-of-way within the City for purposes of constructing Zayo Bandwidth's telecommunications network, and that to require Zayo Bandwidth to enter into those provisions of the Franchise exceeds the City's powers under state law;

3. **Declare** that the provisions of the Franchise requiring Zayo Bandwidth to provide Initial Compensation, General Compensation, and Non-Fee Requirements are unenforceable and *void ab initio.*  Accordingly, this Court should declare those portions of the Franchise invalid and void *ab initio* and should further declare that the City lacks legal authority to impose the same or similar conditions on Zayo Bandwidth's continued occupancy and use of the public rights-of-way;

4. **Declare** that the Initial Compensation, General Compensation, and Non-Fee Requirements that the City requires Zayo Bandwidth to provide as a condition for obtaining permits and access to, and continuing to occupy and use, the public rights-of-way within the City for purposes of constructing Zayo Bandwidth's telecommunications network violate, and are therefore preempted by, the federal Telecommunications Act of 1996, and/or the Constitution of the United States of America;

5. **Declare** that the City's actions, as alleged herein, prohibit, or have the effect of prohibiting, Zayo Bandwidth from providing telecommunications services, and are therefore illegal under the federal Telecommunications Act of 1996, and/or the Constitution of the United States of America;

6. **Declare** that the City's discriminatory and competitively biased treatment of Zayo Bandwidth violates, and is therefore preempted by, state law, including TCA § 65-21-103;

7.   **Declare** that the City's discriminatory and competitively biased treatment of Zayo Bandwidth violates, and is therefore preempted by, the federal Telecommunications Act of 1996, and/or the Constitution of the United States of America

8.   **Declare** that the City has deprived, and continues to deprive, Zayo Bandwidth of its rights under the Constitution and laws of the United States in violation of 42 U.S.C. § 1983;

9.   **Permanently enjoin** the City from seizing, damaging, removing, or otherwise interfering with Zayo Bandwidth's network facilities;

10.  **Order** the City to immediately remove all barriers to the entry into the market for telecommunications services that it has created, whether through enactment or practice, and which violate state and/or federal law;

11.  **Order** the City to compensate Zayo Bandwidth for its use and maintenance of the Zayo network assets it unlawfully required Zayo Bandwidth to furnish to the City including but not limited to those identified in this Complaint, that the City has unjustly retained, or, in the alternative, grant Zayo Bandwidth monetary damages in an amount equivalent to the rents, fees, in-kind compensation and other payments already made, plus interest;

12.  **Grant** Zayo Bandwidth damages and costs, including reasonable attorney's fees in accordance with 42 U.S.C. §§ 1983, 1988(b);

13.  **Grant** Zayo Bandwidth such other relief as is just and equitable.

**RESPECTFULLY SUBMITTED** this 30th day of April, 2009.

/s/ Clarence A. Wilbon
John C. Speer (BPR #7969)
Clarence A. Wilbon (BPR #23378)
Annie T. Christoff (BPR #26241)
Bass, Berry & Sims PLC
100 Peabody Place, Suite 900
Memphis, TN 38103-3672
Telephone: 901.543.5900
Facsimile: 901.543.5999
jspeer@bassberry.com
cwilbon@bassberry.com
achristoff@bassberry.com

*Attorneys for Zayo Bandwidth Tennessee, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2009, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's electronic filing system.

/s/ Clarence A. Wilbon